IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARISE PARKER,

> *Plaintiff*,

v.

CHILDREN'S NATIONAL
MEDICAL CENTER, INC.

> *Defendant*.

Civil Action No. ELH-20-3523

## MEMORANDUM OPINION

In this employment discrimination action, plaintiff Sharise Parker filed suit against her former employer, defendant Children's National Medical Center, Inc. ("CNMC"). ECF 1. In the Amended Complaint (ECF 12),[1] Parker alleges that after she disclosed her "high risk" pregnancy to her supervisor, she was subjected to discrimination on the basis of sex, pregnancy, and pregnancy-related disabilities, as well as retaliation. *Id*. ¶¶ 10-13. Moreover, plaintiff contends that she was terminated following her request for reasonable accommodations. *Id*. ¶¶ 30-36.

The Amended Complaint contains three counts and seeks both legal and equitable relief. *See id*. at 6-9. In Count I, Parker alleges sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) (the "PDA"). ECF 12, ¶¶ 37-42. In Count II, she alleges discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. (the "ADA"). ECF 12, ¶¶ 43-45. And in Count III, she alleges sex and disability discrimination, interference with statutory rights, and

---

[1] Although ECF 12 is an amended suit, plaintiff has labeled it "Complaint."

retaliation, in violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Code (2021 Repl. Vol.), § 20-601 *et seq.* of the State Government Article ("S.G.").  ECF 12, ¶¶ second 43-45.[2]

CNMC has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 13.  The motion is supported by a memorandum of law.  ECF 13-1 (collectively, the "Motion").  Parker opposes the Motion (ECF 16, the "Opposition"), and has submitted several exhibits (ECF 16-1–16-5), including the Charge of Discrimination ("Charge") that she submitted to the Equal Employment Opportunity Commission ("EEOC").  *See* ECF 16-4 (the "Charge").[3]  CNMC's reply is docketed at ECF 17 (the "Reply") and is accompanied by one exhibit (ECF 17-1).

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

### I.  Factual Background[4]

Between September 2018 and February 2019, Parker was employed by CNMC as a "Training Specialist."  ECF 12, ¶¶ 3, 5.  Her immediate supervisor was Itina Viaud, the "Operations & Process Improvement Manager for Ambulatory Services."  *Id.* ¶ 9.

---

[2] The paragraphs in Count II and Count III contain duplicate numbers.  *See* ECF 12 at 7-8.

[3] As a preliminary matter, CNMC argues that the Opposition should be "stricken, and . . . its Motion to Dismiss be granted as unopposed," because Parker's counsel filed the Opposition four days after the deadline to do so.  ECF 17 at 3-4. Adherence to the Court's deadlines is important. Although the Opposition was belatedly filed, without explanation, CNMC has not suffered any prejudice as a result of the delay.  Moreover, courts favor resolution of cases on the merits.  *See Davis v. Piper Aircraft Corp*., 615 F.2d 606, 613 (4th Cir. 1980).

[4] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Parker submitted a number of documents with her Opposition. For the reasons discussed, *infra*, I will only consider the Charge.

Throughout the Memorandum Opinion, the Court cites to the electronic pagination.  It does not always correspond to the page number imprinted on the particular submission.

Plaintiff's employment at CNMC fell within the company's six-month "introductory period." ECF 12, ¶¶ 16, 27, 28, 35, 36.  The introductory period concludes with a "performance evaluation" of the employee, for the purpose of advising the employee of his or her strengths, weaknesses, and the expectations for the position.  *Id.* ¶¶ 35, 36.

In November 2018, Parker learned that she was pregnant, with a due date of July 8, 2019. *Id.* ¶ 10.  Because of Parker's "age and a preexisting medical condition that could cause complications with her pregnancy, the pregnancy was considered 'high risk.'" *Id.* ¶ 11.[5]   In late November 2018, Parker disclosed her pregnancy to Viaud, her supervisor.  *Id.* ¶ 12.

Thereafter, Parker alleges that Viaud "began treating Ms. Parker differently and less favorably, subjected her to heightened scrutiny and exaggerated criticisms, pressured her to specify when and how much time she planned to take off for the birth of her child, made statements demonstrating pregnancy-based animus and/or bias, [and] denied her informal requests for accommodations she needed as a result of pregnancy-related impairments . . . ." *Id.* ¶ 13.  Parker alleges several specific incidents, which are described below.

In early December 2018, Parker was placed on "'bed rest'" for three days "due to indications that she might be having a miscarriage."  *Id.* ¶ 14.  In response, Viaud "expressed concern about having to temporarily redistribute" work that Parker was unable to perform, denied Parker's request to telework, and "required her to use leave during her absence."  *Id.*  Initially, Viaud stated that Parker was not allowed to work from home based on the doctor's note Parker provided to Viaud.  *Id.* ¶ 15.  But, after Parker responded that the note did not preclude telework, Viaud claimed that telework was not permitted during Parker's introductory period.  *Id.* ¶ 16.

_____

[5] Parker was 42 years old as of November 2018.  *See* ECF 16-4 at 1.

According to plaintiff, CNMC's written policy as to the introductory period "does not state that employees may not work from home during the introductory period." ECF 12, ¶ 29. Moreover, according to Parker, Viaud had previously permitted Parker to work from home. *Id.* ¶ 25. In addition, "Viaud allowed other employees who were not affected by pregnancy to work from home." *Id.* ¶ 26. Parker's Charge specifically mentions JaDonna Harris, a Program Associate, "another Female coworker not affected by pregnancy who reported to Ms. Viaud." ECF 16-4 at 2. And, Viaud "routinely worked from home." ECF 12, ¶ 26.

In mid January 2019, Parker's doctor recommended that Parker work no more than an eight-hour work day. *Id.* ¶ 17. Parker informed Viaud of the restriction, and Viaud responded that the recommendation "did not matter" because Parker was "'still a salaried employee' and her pregnancy was 'no excuse.'" *Id.* ¶ 18.

After Parker took a fall on or about February 12, 2019, she made an emergency visit to her doctor. *Id.* ¶ 19. At around 7:00 a.m. that day, Parker sent Viaud a text message to inform her of what happened. *Id.* ¶ 20. Later, she contacted Viaud by phone. *Id.* ¶ 21. The next day, when Parker came to work, Viaud "complained" that Parker had initially texted, rather than called, regarding the situation. *Id.* ¶ 22.

On or about February 20, 2019, Parker requested that she be allowed to telework, because "the National Weather Service had issued a winter storm warning and she feared another fall might cause her to have a miscarriage." *Id.* ¶ 23. Viaud denied the request, telling Parker she needed to report to work in person because it was not snowing yet, and because she was still within her introductory period. *Id.* ¶¶ 23, 24.

In view of what Parker saw as Viaud's "obvious hostility and persistent refusal to accommodate Ms. Parker's informal requests for reasonable accommodations relating to her

pregnancy," Parker submitted a formal request for reasonable accommodations to CNMC's third-party benefits administrator, The Hartford.  ECF 12, ¶ 30.  The Complaint does not allege when Parker submitted this request, although she apparently did so before February 22, 2019.  On or about that date, The Hartford notified CNMC and Parker that Parker was "eligible to apply for reasonable accommodations under the ADA."  *Id*. ¶ 31.  The Hartford gave Parker until March 15, 2019, to submit the necessary paperwork from her doctor.  *Id*.  Viaud was also made aware of this information, and knew that Parker had requested leave on March 4, 2019, to see her doctor.  *Id*. ¶¶ 31, 32.

At the end of the day on February 28, 2019, Viaud called Parker to her office and "summarily" informed her that "her employment was terminated effective immediately."  *Id*. ¶ 33. Viaud told Parker the termination was due to her "poor performance based on Ms. Viaud's 'introductory period review.'"  *Id*. ¶ 34.  Yet, Viaud did not identify "any particular deficiencies" in Parker's performance, and the end of her six-month introductory period was still one month away.  *Id*. ¶ 36.  Parker alleges that Viaud "terminated her within days of learning that she had submitted a formal request for reasonable accommodations related to her pregnancy."  *Id*. ¶ 13.

Viaud filed a Charge of Discrimination with the EEOC on August 27, 2019.  *Id*. ¶ 6; ECF 16-4.  The EEOC mailed to Parker a "Notice of Rights related to her Charge" on September 1, 2020.  ECF 12, ¶ 7.  This suit followed on November 12, 2020.  *See* ECF 1.

Additional facts are included, *infra*.

## II.  Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011));  *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to

dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"   *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n*

*v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"

*Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, Parker submitted five exhibits with the Opposition. Although they were not submitted with the suit, Parker argues that these documents were "referred to in the Amended Complaint or . . . relied upon in bringing this suit." ECF 16 at 2 n.1. The first is a declaration by Parker's counsel attesting to the veracity of the other exhibits. ECF 16-1. The second is a "5-page summary of the factual and legal basis for Ms. Parker's claims," which Parker's counsel sent to CNMC's Vice President and Chief Risk Officer prior to filing the lawsuit. ECF 16-1, ¶ 4; ECF 16-2. The third exhibit is a response from the same CNMC official to counsel's summary. ECF 16-1, ¶ 5; ECF 16-3. The fourth exhibit is Parker's Charge, submitted to the EEOC. ECF 16-1 ¶ 6; ECF 16-4. The fifth exhibit is correspondence from CNMC's in-house counsel to the EEOC, setting forth CNMC's position statement in response to the Charge. ECF 16-1, ¶ 7; ECF 16-5.

Parker's Charge was explicitly referenced in the Amended Complaint (ECF 12, ¶ 6), and therefore may be considered. Notably, "[i]n employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021) (citing *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018)); *see also, e.g.*, *Batkins v. CSX Transp., Inc.*, SAG-19-1541, 2019 WL 5064647, at *4 (D. Md. Oct. 9, 2019) ("Accordingly, I will consider the

contents of [plaintiff's] EEOC Charge, and treat them as true, in adjudicating [defendant's] motion to dismiss."); *Davidson v. Sarnova*, JKB-17-1067, 2017 WL 3581999 at *2 n.2 (D. Md. Aug. 18, 2017) ("Indeed, courts in this district have consistently found that even under the strict demands imposed by Rule 12(b)(6), an EEOC charge not attached to a complaint may be considered without converting the motion into one for summary judgment."); *James v. Fed. Reserve Bank of N.Y.*, No. 01-CV-1106-RJD, 2005 WL 1889859, at *1 (E.D.N.Y. Aug. 8, 2005) ("The Court considers as true for present purposes the following allegations, which plaintiff . . . makes in the complaint and in EEOC charges.").

But, the Amended Complaint does not reference ECF 16-2, ECF 16-3, or ECF 16-5.  It is of no moment that Parker's counsel "relied upon" these documents in bringing the suit.  Moreover, these documents are not integral to the Amended Complaint, nor are they matters of public record.  Therefore, I may not consider them in evaluating the Motion.[6]

### III.  Discussion

Parker has brought claims for both discrimination and retaliation, pursuant to Title VII, as amended by the PDA, as well as claims under the ADA and the FEPA.  Her claims under Title VII and FEPA allege discrimination based on sex, pregnancy, and pregnancy-related medical conditions.  CNMC argues that Parker has failed to state a plausible claim for discrimination or retaliation under Title VII, the ADA, or FEPA.  ECF 13-1.  Parker has a ready response for each of CNMC's arguments.  ECF 16.

---

[6] Because I do not consider these exhibits, I need not resolve CNMC's additional argument that these three documents should be excluded under Federal Rule of Evidence 408 as evidence of settlement discussions.  *See* ECF 17 at 6-9.

Similarly, it is unnecessary to examine whether I may consider the exhibit attached to CNMC's Reply, which consists of email correspondence between plaintiff's counsel and CNMC's Vice President and Chief Risk Officer.  *See* ECF 17-1.  This exhibit relates solely to CNMC's argument as to Rule 408.  *See* ECF 17 at 6-9.

I will address each issue in turn, first discussing the general principles and then turning to their application to this case.  In this regard, I note that the Maryland Fair Employment Practices Act is the State law analogue to the federal employment discrimination statutes.  Moreover, Maryland courts "'traditionally seek guidance from federal cases in interpreting [it].'"  *Eubanks v. Mercy Medical Center, Inc.*, WDQ-15-513, 2015 WL 9255326, at *7 (D. Md. Dec. 17, 2015) (brackets added) (quoting *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 481 (914 A.2d 735, 742 (Md. 2007)) (construing former Article 49B of the Maryland Code).  This applies to both Title VII, *see Lowman v. Maryland Aviation Admin.*, JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (recognizing that FEPA "'is the state analogue of Title VII'") (citation omitted), and the ADA.  *See Nelson-Rogers v. Kaiser Permanente*, GJH-17-3326, 2020 WL 917067, at *7 n.6 (D. Md. Feb. 25, 2020) ("[C]ourts generally treat the analysis of claims under the ADA and FEPA as coterminous." (citing cases)).

Neither party has identified any relevant difference between FEPA and the federal statutes.  Accordingly, the Court will analyze plaintiff's FEPA claim (Count III) under the Title VII and ADA standards, as applicable.  *See Nelson-Rogers*, 2020 WL 917067, at *7 n.6; *Lowman*, 2019 WL 133267, at *4.

### A.  Title VII—Disparate Treatment (Count I)

#### 1.  Title VII and the PDA Generally

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2.  This proscription is "often referred to as the 'disparate treatment' (or 'intentional discrimination') provision . . . ."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015).  As to

disparate treatment, an employer is barred from discriminating with respect to "terms, conditions or privileges of employment," which is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted). And, the Supreme Court has referred to discrimination based on one of the five characteristics specified above as "status-based discrimination." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013).

Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F.3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Section 701(k) of Title VII contains the Pregnancy Discrimination Act, enacted by Congress in 1978. The PDA amended Title VII's definition of sex discrimination to include employment discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions[.]" 42 U.S.C. § 2000e(k). The PDA provides that "women affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). And, "'a claim of discrimination on the basis of pregnancy must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.'" *DeJarnette v. Corning*, 133 F.3d 293, 297 (4th Cir. 1998) (quoting *Boyd v. Harding Academy*, 88 F.3d 410, 413 (6th Cir.1996)).

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees),

*superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820,

832 (1976) (federal employees); *see also McCray v. Md. Dep't of Trans.*, 662 Fed. App'x 221, 224

(4th Cir. 2016). However, exhaustion under Title VII is not jurisdictional. It is, instead, a "claim-

processing rule[] that must be timely raised to come into play." *Fort Bend Cty. v. Davis*, ___ U.S.

___, 139 S. Ct. 1843, 1846, 1850 (2019).

In general, at trial a plaintiff "may establish a discrimination claim under Title VII through

two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 Fed. App'x 301, 302 (4th

Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284

(4th Cir. 2004) (en banc), *abrogated on other grounds by Nassar*, 570 U.S. 338). The plaintiff's

first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles

of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert.*

*denied*, 520 U.S. 1116 (1997); *see Thomas*, 715 Fed. App'x at 302. The plaintiff's second avenue

is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569

U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Sempowich v. Tactile*

*Systems Technology, Inc.*, ___ F.4th ___, 2021 WL 5750450, at *3 (4th Cir. Dec. 3, 2021)

(outlining the two approaches); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir.

2016) (discussing the *McDonell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish

an order of proof and production" at trial. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521

(1993) (emphasis omitted). If the plaintiff chooses to proceed at trial under the *McDonnell*

*Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt*

*v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent.*

*Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). The *McDonell Douglas* framework is intended to be flexible, "not onerous," and is designed to uncover "circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, it "is 'not intended to be an inflexible rule.'" *Young*, 575 U.S. at 228 (citation omitted). But, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). And, even under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

Reference to these methodologies of proof often serves to inform a court's evaluation of a motion for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden – shifting framework established in *McDonnell Douglas Corp*"); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 Fed. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*"). However, at this juncture, the question is whether plaintiff has stated a plausible claim for relief. Nonetheless, reference to the elements of a prima facie claim helps to gauge the adequacy of the factual allegations in terms of plausibility.

To state a prima facie claim of discrimination under Title VII, the plaintiff generally must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action;[7] and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc.*, *Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see Matias v. Elon Univ.*, 780 Fed. App'x 28, 31 (4th Cir. 2019) (per curiam); *Rayyan v. Va. Dep't of Transp.*, 719 Fed. App'x 198, 203 (4th Cir. 2018).

As to the satisfactory job performance factor, a plaintiff need not "show that he was a perfect or model employee. Rather, a plaintiff must only show that he was qualified for the job and that he was meeting his employer's legitimate expectations." *Haynes*, 922 F.3d at 225. And, with regard to adverse action, it must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Sempowich*, 2021 WL 5750450, at *3 (citing *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020); *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)).

In *Young v. United Parcel Service*, 575 U.S. at 229, the Supreme Court articulated a modified version of the *McDonnell Douglas* prima facie requirement for "a plaintiff alleging that the denial of an accommodation constituted disparate treatment under the [PDA's] second clause," which provides that "women affected by pregnancy . . . shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work," 42 U.S.C. § 2000e(k). In this context, a plaintiff "may make out a prima facie case by showing . . . that she belongs to the protected class, that she sought accommodation, that

---

[7] In contrast, to state a prima facie claim of retaliation under Title VII, a plaintiff need only allege adverse action, rather than adverse *employment* action. *See Strothers*, 895 F.3d 317, 327.

the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'"  *Young*, 575 U.S. at 229.

At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination.  In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."  Further, the Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."  *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ."  *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, 557 U.S. 1138 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544.  *See Littlejohn v. Cty. of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent."  *Id.* at 309.  On the other hand, in *Twombly* the Court said that a plaintiff must "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ."  *Iqbal*, 556 U.S. at 684.

In *Woods*, 855 F.3d at 648, the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]"  *See also*

*Swaso*, 698 Fed. App'x at 747-48 ("While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under *Twombly* and *Iqbal*." (internal citations omitted)); *McCleary*, 780 F.3d at 584; *Coleman*, 626 F.3d at 190.  Accordingly, at the motion to dismiss stage the question "is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'"  *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).

## 2. Analysis

CNMC argues that Parker has failed to allege facts sufficient to state a plausible claim of pregnancy discrimination.  It focuses on three particular elements of a prima facie claim: failure to identify similarly situated employees; failure to allege an adverse employment action; and failure to allege that Parker was satisfying CNMC's legitimate expectations.  ECF 13-1 at 5-11.  Parker responds that she has "pled more than enough facts to meet her burden of proof through either direct evidence or the *McDonnell Douglas* burden – shifting approach."  ECF 16 at 9.

As noted, the elements of an employment discrimination claim are "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'"  *Goode*, 807 F.3d at 626 (quoting *Coleman*, 626 F.3d at 190); *see also Matias*, 780 Fed. App'x at 31; *Rayyan*, 719 Fed. App'x at 203.  To survive a motion to dismiss, a plaintiff need not *establish* a prima facie case.  But, she must *allege* facts "that plausibly state a violation of Title VII 'above a speculative level.'"  *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).

There is no dispute that Parker is a member of a protected class.  For the second element, CNMC argues that Parker has failed to plead facts that show she was "satisfying CNMC's legitimate expectations."  ECF 13-1 at 11.

18

In the Amended Complaint, Parker asserts that she was "abruptly" fired by Viaud, but Viaud "did not identify any particular deficiencies in Ms. Parker's job performance." ECF 12, ¶ 36. Rather, she generically cited plaintiff's "poor performance." Further, Parker alleges she was "subjected . . . to heightened scrutiny and exaggerated criticisms," and that the proffered reasons for her firing were "false and pretextual." *Id.* ¶¶ 13, 38. Drawing all reasonable inferences in Parker's favor, she adequately pleaded that her job performance was satisfactory.

As for the third element, CNMC argues that Parker has failed to allege facts demonstrating that Viaud's denial of Parker's telework request, and her rejection of the eight-hour work day recommended by plaintiff's physician, constituted adverse employment action. ECF 13-1 at 10-11. Defendant notes that plaintiff does not allege that these decisions "adversely affected Plaintiff's pay or any of the other terms or conditions of her employment." *Id.* at 11.

In her Amended Complaint, Parker asserts that Viaud denied plaintiff's request to telework and required her to use leave during her period of bed rest (ECF 12, ¶¶ 14-16); Viaud rejected the doctor's recommendation that Parker only work an eight hour day (*id.* ¶¶ 17, 18); Viaud complained that Parker had initially contacted her by text during her emergency doctor's visit (*id.* ¶¶ 19-22); Viaud denied Parker's request to telework during a forecasted snow emergency (*id.* ¶¶ 23-24); and Viaud ultimately fired Parker after Parker submitted a request for reasonable accommodations. *Id.* ¶¶ 30-36.

"[T]he existence of some adverse employment action is required" for a plaintiff to prevail on a Title VII discrimination claim. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle*, 650 F.3d

at 337 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Laird*, 978 F.3d at 893 ("For a discrimination claim, the plaintiff must show that her employer took an action that adversely 'affect[ed] employment or alter[ed] the conditions of the workplace.'" (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) ("*Burlington Northern*"))).

Parker's termination plainly was an adverse employment action. As for the two telework-related incidents, as CNMC correctly points out, "courts in this circuit have frequently held [that] an employer's refusal to allow a flex schedule or telework arrangement, *without more*, does not rise to the level of an adverse employment action." *Walker v. Md. Dep't of Info. and Tech.*, CCB-20-219, 2020 WL 6393435, at *3 (D. Md. Nov. 2, 2020) (emphasis added) (collecting cases).

In *Lee v. Mattis*, PX-17-2836, 2018 WL 3439261 (D. Md. July 18, 2018), Judge Xinis concluded that the plaintiff had successfully alleged an adverse employment action based on her employer's refusal to permit telework, combined with micro-management, excessive criticism, an unreasonable workload, and other allegations that created an "'abusive environment.'" *Id.* at *9 (quoting *Strothers*, 895 F.3d at 332). Parker alleges that CNMC's refusal to permit telework should be considered as part of other incidents, such as "heightened scrutiny and exaggerated criticisms," eventually leading to plaintiff's termination. ECF 12, ¶ 13. On the whole, then, Parker has plausibly alleged adverse employment actions by CNMC.[8]

Further, CNMC argues that the Amended Complaint "fails to identify similarly situated employees who were allowed to work from home." ECF 13-1 at 6-10. This implicates the fourth

---

[8] Parker cites *Int'l Union v. Johnson Controls*, 499 U.S. 187, 199-206 (1991), for the proposition that requiring an employee to take leave is adverse action. But *Johnson Controls*, which ruled against a company's "fetal protection policy," prohibiting women from jobs involving lead exposure, is not analogous to this case.

prong, requiring plaintiff to allege "different treatment from similarly situated employees outside the protected class." *Goode*, 80 F.3d at 626.

"Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects. *Swaso*, 698 Fed. App'x at 748; *see Irani v. Palmetto Health*, 767 Fed. App'x 399, 420 (4th Cir. 2019) (per curiam); *Haywood*, 387 Fed. App'x at 359; *Coleman*, 626 F.3d at 191; *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). This includes "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood*, 387 Fed. App'x at 359 (quoting *Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 (6th Cir. 1992)); *see Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013), *aff'd*, 576 Fed. App'x 199 (4th Cir. 2014).

Of course, the comparison "'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances.'" *Haynes*, 922 F.3d at 223-24 (citation omitted); *see Irani*, 767 Fed. App'x at 420. But, the prima facie standard does not "require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." *Young*, 575 U.S. at 228 (citing *McDonnell Douglas*, 411 U.S. at 802). Nevertheless, "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently, '[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 Fed. App'x at 748 (citation omitted). "'Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables

between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" *Id.* (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)).

Of relevance here, Parker alleges in the Amended Complaint that Viaud "allowed other employees who were not affected by pregnancy to work from home," and that Viaud "routinely worked from home" herself. ECF 12, ¶ 26. Her Charge, which I may consider, provides additional detail: that "Program Associate JaDonna Harris, another Female coworker not affected by pregnancy who reported to Ms. Viaud, worked from home." ECF 16-4 at 2. Parker also alleges that she was often permitted to work from home prior to disclosing her pregnancy. ECF 12, ¶ 25.

CNMC argues that these details do not adequately allege that similarly situated employees were allowed to work from home. ECF 13-1 at 6-10. Parker contends that CNMC's arguments as to comparators do not apply because her claim is not premised on *Young*'s modified prima facie framework for pregnancy discrimination. ECF 16 at 11-12. But, the case law concerning comparators is part of the general *McDonnell Douglas* framework, and is broadly applicable for Title VII discrimination claims, including the claim lodged by Parker. *See, e.g.*, *Swaso*, 698 Fed. App'x at 748; *Coleman*, 626 F.3d at 190.

To be sure, the Amended Complaint alleges in conclusory fashion that non-pregnant co-workers of plaintiff were able to work from home. ECF 12, ¶ 26. But, in her Charge, Parker identified a non-pregnant employee, JaDonna Harris, who was allowed to work from home, and who also "reported to Ms. Viaud" as a Program Associate. ECF 16-4 at 2.[9] The specificity in the

---

[9] The allegation in the Amended Complaint that Viaud herself routinely worked from home is insufficient, because Viaud, as Parker's supervisor, is not similarly situated. *See, e.g.*, *Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009) ("A supervisor and his subordinates are, by definition, not alike in qualifications.").

Charge distinguishes this claim from those cases cited by CNMC. *See Coleman*, 626 F.3d at 191 (white person treated differently, with no allegation of similarity between comparators); *Parker v. Ciena Corp.*, WDQ-14-4036, 2016 WL 153035, at *5 (D. Md. Jan. 12, 2016) (no information from which to infer comparator was similarly situated); *Kamatta v. Burwell*, WDQ-14-3684, 2015 WL 4548615, at *5 (D. Md. July 27, 2015) (no information provided as to purported comparators); *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 442 (D. Md. 2013) (conclusory allegation of "similarly situated male drivers").

To plausibly allege a Title VII disparate treatment claim, a plaintiff may "'establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . discrimination motivated the employer's adverse employment decision.'" *Thomas*, 715 Fed. App'x at 302 (citing *Hill*, 354 F.3d at 284). Taking all the facts in the Amended Complaint as true, including the Charge, and drawing all reasonable inferences in Parker's favor, she has plausibly stated a claim of discrimination.

Parker also argues that she has alleged "direct evidence that [her] requests to work from home and to limit her work hours were denied and that she was discharged solely because she requested accommodations related to her pregnancy." ECF 16 at 8-11. CNMC responds that she has fallen well short. ECF 17 at 10-13.

"Direct evidence must be evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision. Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542,

548 (4th Cir.1995) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993)), *rev'd on other grounds*, 517 U.S. 308 (1996). "Consequently, a plaintiff faces a demanding standard when attempting to demonstrate direct evidence." *Jordan v. Radiology Imaging Associates*, 577 F. Supp. 2d 771, 779 (D. Md. 2008).

I have found that Parker has plausibly alleged a violation of Title VII in her Complaint. Therefore, I need not determine whether she has adequately alleged direct evidence of discrimination. The Title VII discrimination claim may proceed.

### B. The ADA—Disparate Treatment (Count II)

#### 1. The ADA Generally

The ADA, 42 U.S.C. §§ 12101 *et seq.*, was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). To that end, the statute "prohibits discrimination against persons with disabilities in three major areas of public life: employment, under Title I, 42 U.S.C. §§ 12111–12117; public services, under Title II, 42 U.S.C. §§ 12131-12165; and public accommodations, under Title III, 42 U.S.C. §§ 12182-12189." *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 361 (4th Cir. 2008) (citing *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004)).[10]

Of relevance here, Title I of the ADA concerns employment. It prohibits employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions,

---

[10] The ADA contains five titles. Title IV pertains to Telecommunications and Title V contains Miscellaneous Provisions.

and privileges of employment." 42 U.S.C. § 12112(a).  Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B).  And, the ADA bars the discharge of a qualified employee because she is disabled. *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014).[11]

A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  A disability is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"  *Id.* § 12102(1); *see Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting 29 C.F.R. § 1630.2(k)(1)).  Major life activities include, but are not limited to, "sleeping, walking, standing, lifting, bending . . . working" and "reproductive functions."  42 U.S.C. § 12102(2)(A)-(B).  In the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (the "ADAAA"), Congress considerably broadened the definition of disability, as well as the standard for "substantially limits."  *See Miller v. Md. Dep't of Natural Resources*, 813 Fed. App'x 869, 875 (4th Cir. 2020) (Mem.); *Summers*, 740 F.3d at 329.

---

[11] "Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e–5(b), (f)(1)."  *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).  The administrative claims process is "an integral part" of the enforcement scheme that Congress set out in Title VII.  *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005).  By incorporation, it is also integral to the ADA.  *See Sydnor*, 681 F.3d at 593. "Allowing [the EEOC] first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'"  *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

An individual with a "a record of such an impairment," or who is "regarded as having such an impairment," is considered to have a disability.  42 U.S.C. § 12102(1)(B)-(C).  A plaintiff has a "record of disability" if she can show that she "'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'"  *Foore v. Richmond*, 6 Fed. App'x 148, 153 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)(1)).  This is "'a question of law for the court.'"  *Coghill v. Bd. of Educ. of Prince George's Cty.*, GJH-14-2767, 2017 WL 1049470, at *5 (D. Md. Mar. 17, 2017) (citation omitted), *aff'd*, 703 Fed. App'x 211 (4th Cir. 2017).  To resolve this question, the court must make an "an individualized inquiry, particular to the facts of each case."  *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001).  The "date of an adverse employment decision is the relevant date for determining whether a plaintiff is a 'qualified individual with a disability.'"  *E.E.O.C. v. Stowe-Pharr Mills, Inc.*, 216 F.3d 373, 379 (4th Cir. 2000).

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]"  42 U.S.C. § 12112(b)(5)(A); *see Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 344 (4h Cir. 2013).  Additionally, "discrimination against a qualified individual on the basis of disability" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(B).  And, the ADA bars the discharge of a qualified employee because she is disabled. *Summers*, 740 F.3d at 328.

"One form of discrimination prohibited by the ADA is a failure to make a reasonable accommodation."  *Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 Fed. App'x 314, 311 (4th

Cir. 2011). "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,' 29 C.F.R. § 1630.2(o)(1)(ii); or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities,' *id.* § 1630.2(o)(1)(iii)." *See Hamel v. Bd. of Educ. of Harford Cty.*, JKB-16-2876, 2018 WL 1453335, at \*10 (D. Md. Mar. 23, 2018).

A reasonable accommodation "may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9) (emphasis added). A reasonable accommodation may also include accrued paid leave or unpaid leave. *See* 29 C.F.R. pt. 1630 app. § 1630.2(o) ("[O]ther accommodations could include . . . permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment[.]"). However, an accommodation is not reasonable as a matter of law "if it either imposes undue financial and administrative burdens on a grantee, or requires a fundamental alteration in the nature of [the] program." *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288, (1987) (internal citations omitted); *see Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 414 (4th Cir. 2015); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464 (4th Cir. 2012).

The precedent discussed earlier with regard to Title VII is generally applicable in the context of the ADA. *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) ("Disability discrimination may be proven through direct and indirect evidence or through the *McDonnell Douglas* burden-shifting framework.") (citing *Raytheon Co. v. Hernandez*, 540

27

U.S. 44, 49-50 & n.3 (2003)); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—courts have routinely used Title VII precedent in ADA cases"); *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391-92 (4th Cir. 2001) (applying the Title VII framework). Thus, avenues of proof apply to a disability discrimination claim. *See also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-70 (4th Cir. 1999) (holding that Title VII's mixed-motive causation requirement, and not the Rehabilitation Act's "solely because of" causation requirement, applies to the ADA).

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability.'" *Jacobs*, 780 F.3d at 572 (quoting *Stowe–Pharr Mills, Inc.,* 216 F.3d at 377).

To establish a prima facie case of wrongful discharge under the ADA, the plaintiff is generally required to show that (1) the employee is a qualified individual with a disability; (2) the employee was discharged; (3) at the time of discharge, the employee was performing the job at a level that met the employer's legitimate expectations; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Coursey v. Univ. of Md. E. Shore*, 577 Fed. App'x 167, 174 (4th Cir. 2014) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)); *see also Summers*, 740 F.3d at 328; *Harris v. Reston Hosp. Ctr., LLC*, 523 Fed. App'x 938, 947 (4th Cir. 2013) (per curiam); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995). "The plaintiff may establish the fourth element of the prima facie case 'either by showing that [comparably qualified] persons outside the protected class were retained

in the same position or by producing some other evidence indicating that the employer did not treat [disability] neutrally.'" *Munoz v. Baltimore Cty., Md.*, RDB-11-02693, 2012 WL 3038602, at *6 (D. Md. July 25, 2012).

To state a prima facie claim of failure to accommodate, a plaintiff must allege: (1) the employee was an individual with a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Rhoads*, 257 F.3d at 387 n.11 (4th Cir. 2001); *see also Stephenson v. Pfizer*, 641 Fed. App'x 214, 219 (4th Cir. 2016) (per curiam); *Jacobs*, 780 F.3d 579; *Wilson*, 717 F.3d at 345.

### 2.   Analysis

As both Parker and CNMC agree (ECF 13-1 at 12; ECF 16 at 13-14), the elements of a prima facie claim for disability discrimination under the ADA are mostly similar to the elements of a prima facie claim for Title VII discrimination.  The plaintiff must show that she was a qualified individual with a disability; that she was meeting the employer's legitimate expectations; that she was subject to an adverse employment action; and that the action occurred under circumstances raising a reasonable inference of unlawful discrimination, principally through the use of comparators.  *See Jacobs*, 780 F.3d at 572 (quoting *Stowe–Pharr Mills, Inc.,* 216 F.3d at 377); *Coursey*, 577 Fed. App'x 167, 174 (citing *Haulbrook*, 252 F.3d at 702); *see also Summers*, 740 F.3d at 328; *Harris*, 523 Fed. App'x at 947; *Martinson*, 104 F.3d at 68; *University of Maryland Med. Sys. Corp.*, 50 F.3d at 1264-65.  As with a Title VII claim, at the motion to dismiss stage, a plaintiff need not establish a prima facie case, but merely allege facts "that plausibly state a violation of [the ADA] 'above a speculative level.'"  *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).

I have already determined that Parker has plausibly alleged that she was meeting CNMC's legitimate expectations; that she was subject to adverse employment action; and that similarly situated employees outside of the protected class were treated differently. Parker and CNMC disagree as to the first element: whether Parker has plausibly alleged that she is disabled within the meaning of the ADA. *See* ECF 13-1 at 12-15; ECF 16 at 13-16; ECF 17 at 16-18.

"'With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA.'" *Genovese v. Hartford Health and Fitnes Club, Inc.*, WMN-13-217, 2013 WL 2490270, at *5, n.3 (D. Md. June 7, 2013) (quoting *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 890 (D. Md. 1996)); *accord Kande v. Dimensions Health Corp.*, GJH-18-2306, 2020 WL 7054771, at *4 (D. Md. Dec. 2, 2020); *Saah v. Thumel*, RDB-15-2425, 2017 WL 491221, at *6 (D. Md. Feb. 7, 2017). At the same time, "courts have consistently found that, while pregnancy alone is insufficient to state a claim under the ADA, complications related to pregnancy may be found to be impairments that substantially limit a major life activity such that they constitute disabilities." *Kande*, 2020 WL 7054771, at *4 (collecting cases).[12] As the EEOC has noted in guidance on this issue, U.S. EQUAL EMP'T OPPORTUNITY COMM'N, EEOC CVG-2015-1, ENFORCEMENT GUIDANCE ON PREGNANCY DISCRIMINATION AND RELATED ISSUES (June 25, 2015), https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues#_ftnref142 (internal citations omitted):

> Although pregnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability, some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA, as amended. An impairment's cause is not relevant in determining whether the impairment is a disability. Moreover, under the amended ADA, it is likely that a

---

[12] For its part, FEPA explicitly recognizes that disabilities may be "caused or contributed to by pregnancy or childbirth," and requires such disabilities to be considered "temporary disabilities for all job-related purposes." S.G. § 20-609.

number of pregnancy-related impairments that impose work-related restrictions will be substantially limiting, even though they are only temporary.

Thus, the question is whether Parker has plausibly alleged facts that support her claim that her pregnancy-related complications qualify as a disability under the ADA's standard definition. "An individual alleges he has an actual disability when he alleges (1) a physical or mental impairment that (2) substantially limits (3) one or more major life activities." *Miller*, 813 Fed. App'x at 875 (citing 42 U.S.C. § 12102(1)). As noted, the ADA Amendments Act of 2008 considerably loosened the definitions of "disability" and "substantially limits." *Summers*, 740 F.3d at 329. "[T]he amended Act provides that the definition of disability 'shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms.'" *Id*. (quoting 42 U.S.C. § 12102(4)(A)). The EEOC has clarified that "'[t]he term "substantially limits" shall be construed broadly in favor of expansive coverage' and that the term is 'not meant to be a demanding standard.'" *Summers*, 740 F.3d at 329 (quoting 29 C.F.R. § 1630.2(j)(1)(i)).[13]

"Major life activities" include, *inter alia*, "caring for oneself, performing manual tasks . . . concentrating, communicating, thinking, and working." 42 U.S.C. § 12102(2)(A). "For a major life activity to be 'substantially[ limit[ed],' the impairment need only 'substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.'" *Miller*, 813 Fed. App'x at 875 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "There is no requirement that an

---

[13] In the past, the Fourth Circuit has granted *Chevron* deference to EEOC regulations interpreting the ADA. *See Jacobs*, 780 F.3d at 572-73; *Summers*, 740 F.3d at 331-32; *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984).

actual disability be long lasting or severe." *Miller*, 813 Fed. App'x at 875 (citing 29 C.F.R. § 1630.2(j)(1)(ix)). "Determining whether the activity is substantially limited compared to most people 'usually will not require scientific, medical, or statistical analysis.'" *Miller*, 813 Fed. App'x at 875 (quoting 29 C.F.R. § 1630.2(j)(1)(v)).

With these principles in mind, I review the allegations in the Amended Complaint. Plaintiff alleges that "[b]ecause of [her] age and a preexisting medical condition that could cause complications with her pregnancy, the pregnancy was considered 'high risk.'" ECF 12, ¶ 11. According to the Charge, Parker would have been 42 years old as of November 2018, when she learned she was pregnant. *See* ECF 16-4 at 1. "[D]ue to indications that she might be having a miscarriage," Parker was placed on three days' bed rest in December 2018. ECF 12, ¶ 14. In January 2019, Parker's doctor "recommended that she work no more than an 8-hour workday." *Id*. ¶ 17. In February 2019, Parker fell, and the next week she sought to telework, because of a winter storm warning, and "she feared another fall might cause her to have a miscarriage." ECF 12, ¶¶ 19, 23.

Parker adequately alleged the existence of a disability. She has asserted a ""high risk" pregnancy. And, she has alleged that this impairment substantially limited a major life activity, *i.e.*, working over the course of several months during the pregnancy. And, under the ADAAA, the definition of "disability" and "substantially limits" is broad.

CNMC has cited a battery of cases in its briefing for the proposition that Parker has not adequately alleged a disablity, but they are distinguishable. Several were decided prior to the passage of the ADAAA or otherwise used pre-ADAAA law. *See, e.g.*, *Boitnott v. Corning Inc.*, 669 F.3d 172, 174-75 (4th Cir. 2012) (applying pre-ADAAA law for a claim that occurred prior to the ADAAA's passage); *Brockman v. Snow*, 217 Fed. App'x 201, 208-09 (4th Cir. 2007);

*Roberts v. Gestamp W. Va., LLC*, No. 2:19-CV-00854, 2020 WL 6142258, at *7 (S.D. W. Va. Oct. 19, 2020) (citing *Pollard v. High's of Baltimore*, 281 F.3d 462, 467-68 (4th Cir. 2002), which was explicitly recognized as abrogated by the ADAAA in *Thomas v. City of Annapolis*, 851 Fed. App'x 341, 349 n.6 (4th Cir. 2021)).  Accordingly, their value is limited.

Others are distinguishable factually and procedurally.  For example, in *Colon v. Sabic Innovative Plastics US, LLC*, No. 1:15-CV-651, 2017 WL 3503681 (S.D.N.Y. Aug. 15, 2017), the court ruled on summary judgment, not on a motion to dismiss.  Although the court concluded that the plaintiff had failed to establish that she was disabled, this was because her only evidence was that her doctor diagnosed her with a high-risk pregnancy, without any claim that this high-risk pregnancy substantially limited any major life activity or impacted her ability to perform the essential functions of her job.  *Id.* at *6-7.

Similarly, in *Eubanks*, 2015 WL 9255326, Judge Quarles rejected a claim that allergic rhinits constituted a disability in the context of a plaintiff claiming a vaccine exemption.  *Eubanks*, 2015 WL 9255326 at *1, 4-6.  But in *Eubanks*, the complaint "contain[ed] no information about how Eubanks's allergies substantially limited a major life activity," providing only the risks of severe allergies, without stating they applied to her.  *Id.* at *6.  In contrast, Parker has alleged specific impacts and limitations from her condition.

In *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480 (D. Md. 2013), Judge Grimm awarded summary judgment to the defendant on an ADA claim.  *Id.* at 486-91.  He noted that plaintiff's claim of medical leave and work schedule changes as a result of "severe and unusual" pregnancy complications *could* constitute a disability.  *Id.* at 489-90.  But, he held that on summary judgment that the evidence did not support such a finding, because after discovery it became clear that plaintiff's physician had permitted her to return to work with "no restrictions."

*Id*. at 490.   Finally, *Manson v. N.C. A&T State Univ.*, No. 1:07CV867, 2008 WL 2987071 (M.D.N.C. July 31, 2008), concerned plaintiff's claim that his employer regarded him as disabled, not that he was actually disabled.   *Id*. at *7.

CNMC also goes too far in its contention that three days' bed rest "cannot amount to a 'substantial' limitation as a matter of law." ECF 13-1 at 14.   As noted, "[t]here is no requirement that an actual disability be long lasting or severe."   *Miller*, 813 Fed. App'x at 875 (citing 29 C.F.R. § 1630.2(j)(1)(ix)).   The first case cited by CNMC for this proposition, *Roberts*, relied on a pre-ADAAA Fourth Circuit case that was later explicitly recognized as abrogated.   *Roberts*, 2020 WL 6142258, at *7 (citing *Pollard*, 281 F.3d at 467-68, *abrogation recognized in Thomas*, 851 Fed. App'x at 349 n.6).   The second is *Eubanks*, which observed that two instances of having to miss work to visit the doctor for allergies was not a substantial limitation.   2015 WL 9255326, at *6 (citing *Clay v. Campbell Cty. Sheriff's Office*, No. 6:12-cv-62, 2013 WL 3245153, at *3 (W.D. Va. June 26, 2013) (holding that a temporary, one-time bout of kidney stones that resolved within two weeks was not a disability)).

Parker has alleged that she was deemed a high-risk pregnancy because of her age and a preexisting medical condition.   *See* ECF 12, ¶ 11.   As result, in the course of this pregnancy, on at least one occasion she required three days' bed rest, and asserted a need for other adjustments to her work schedule and conditions, such as telework and not exceeding an eight-hour workday.   *See id*. ¶¶ 14-24.

At this stage in the litigation, Parker is not required to provide extensive detail as to her medical condition.   She must merely plead an ADA disability discrimination claim "'above a

speculative level.'" *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).  And, drawing all reasonable inferences in Parker's favor, as I am required to do, she has done so.[14]

## C. Title VII—Retaliation (Count I)

### 1. Title VII Retaliation Law Generally

In addition to its antidiscrimination protections, Title VII contains protections against retaliation by an employer against an employee for engaging in certain kinds of protected activity. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

The Fourth Circuit recently made clear in *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) that the *McDonnell Douglas* proof scheme applies to a retaliation claim.  Thus, "[a] plaintiff may prove that an employer took action with discriminatory or retaliatory intent through direct evidence or through the [*McDonnell Douglass*] burden-shifting framework."  *Strothers*, 895 F.3d at 327 (citing *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015)).

To state a prima facie case for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'"  *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citation

---

[14] As CNMC noted (ECF 13-1 at 15 n.4), and Parker does not contest, Parker has framed her ADA claim as one for disability discrimination, not failure to accommodate.  As I have found that Parker has adequately pled a disability discrimination claim, there is no need to consider the failure to accommodate framework.

omitted); *see Sempowich*, 2021 WL 5750450, at *6; *Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 Fed. App'x 146, 151 (4th Cir. 2017); *Foster*, 787 F.3d at 250; *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005).

As indicated, a plaintiff must establish that she engaged in protected activity.  The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937.

"An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a). But, as the Fourth Circuit has said, "[t]o fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination. The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir.1981) (citation omitted).

"Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259.  "[F]or an employee's activity to constitute protected 'opposition,' she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, and (2) that her conduct in opposition was reasonable." *Netter*, 908 F.3d at 937-38.

The second element is that of an "adverse action."  In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case.

36

(Emphasis added.)  In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim."  *Id.*; *see also Burlington Northern*, 548 U.S. at 64 ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").  Thus, "[t]he scope of Title VII's anti-retaliation provision . . . is broader than the anti-discrimination provision." *Strothers*, 895 F.3d at 327.

That said, "retaliatory actions do have to be 'materially adverse'—such that they 'might have dissuaded a reasonable worker' from engaging in protected activity." *Strothers*, 895 F.3d at 327 (quoting *Burlington Northern*, 548 U.S. at 68).  Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern*, 548 U.S. at 67; *see also Ray*, 909 F.3d at 667.  In other words, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68).  Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019). But "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone*, 178 F.3d at 255.

To establish causation under Title VII, the plaintiff bears the burden of establishing that the alleged retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360; *see also Irani*, 767 Fed. App'x at 421.  The plaintiff may proceed either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster*, 787 F.3d at 249.  This

requirement of but-for causation imposes a higher burden on plaintiffs than the mixed-motive requirement in Title VII's antidiscrimination provision.  *See Foster*, 787 F.3d at 249-50.

Nevertheless, "establishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335; *CSRA*, 12 F.4th at 417.  Indeed, "very little evidence of a causal connection is required to establish a prima facie case of retaliation."  *Roberts v. Glenn Industrial Group, Inc*., 998 F.3d 111, 127 (4th Cir. 2021) (citing *Burgess v. Bowen*, 466 Fed. App'x 272, 283 (4th Cir. 2012)); *see CSRA*, 12 F.4th at 417.  As the Fourth Circuit explained in *Foster*, 787 F.3d at 250-52, "*Nassar* [did] not alter the legal standard for adjudicating a *McDonnell Douglas* retaliation claim," because it did not require establishing but-for causation at the prima facie stage, and but-for causation is already required at the pretext stage.

"A plaintiff may attempt to demonstrate that a protected activity caused an adverse action [at the prima facie stage] 'through two routes.'"  *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Service, Inc*., 839 Fed. App'x 781, 783-84 (4th Cir. 2021)); *see CSRA*, 12 F.4th at 417.  "A plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity.'"  *Roberts*, 998 F.3d at 123 (citing *Johnson*, 839 Fed. App'x at 783-84; *Lettieri v. Equant Inc*., 478 F.3d 640, 650 (4th Cir. 2007) (recognizing that relevant evidence may be used to establish causation)).  Or, a plaintiff may demonstrate that "the adverse act bears sufficient temporal proximity to the protected activity."  *Johnson*, 839 Fed. App'x at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

To be sure, "temporal proximity suffices to show a causal relationship."  *Sempowich*, 2021 WL 5750450, at *6.  In *Strothers*, 895 F.3d at 335-36, the Court said:  "An employee may establish *prima facie* causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse

38

action against the employee soon after becoming aware of such activity." *See also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) ("In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity." (citing *Dowe*, 145 F.3d at 657)).

For the temporal route, there naturally must exist "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501. Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)). Moreover, "'[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.'" *Francis v. Booz, Allen & Hamilton, Inc*., 452 F.3d 299, 309 (4th Cir. 2006) (citation omitted) (affirming summary judgment where the "actions that led to [plaintiff's] probation and termination began before her protected activity, belying the conclusion that a reasonable factfinder might find that [defendant's] activity was motivated by [plaintiff's] complaints").

But, as indicated, temporal proximity is not the sole avenue to establish causation. *CSRA*, 12 F. 4th at 417. Rather, temporal proximity is one of two paths to show causation. As noted, the other path contemplates "the existence of facts indicative of an adverse action "'because of the protected activity.'" *Roberts*, 998 F.3d at 123 (citation omitted).

**2. Analysis**

As indicated, to state a prima facie claim for retaliation, a plaintiff must allege "'that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action.'" *Okoli*, 648 F.3d at 223; *see Strothers*, 895 F.3d at 327; *Guessous*, 828 F.3d at 217; *Smyth-Riding*, 699 Fed. App'x at 151; *Navy Fed. Credit Union*, 424 F.3d at 405-06.

Parker alleges that, after Viaud refused her informal requests for accommodation, she submitted a formal request for reasonable accommodation to CNMC's third-party benefits administrator.  ECF 12, ¶¶ 30-31.  According to plaintiff, Viaud retaliated against her by terminating her employment soon thereafter, and "a reasonable jury could easily conclude that Ms. Viaud fired Ms. Parker for opposing Ms. Viaud's unlawful conduct and/or because Ms. Parker made a formal request for accommodation." *Id*. ¶¶ 31-36; ECF 16 at 16-17.  CNMC argues that requesting an accommodation is not "protected activity" for the purposes of Title VII, and so Parker has not stated a valid claim for retaliation.  ECF 13-1 at 16-17.

And, the Fourth Circuit has explained that "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937.  "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin*, 149 F.3d at 259; *see* 42 U.S.C. § 2000e-3(a).  Moreover, as the Fourth Circuit has said, "[t]o fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination. The opposition clause has been held to encompass

40

informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong*, 647 F.2d at 448 (citation omitted); *see  Laughlin*, 149 F.3d at 259.  "[F]or an employee's activity to constitute protected 'opposition,' she must show (1) that she reasonably believed that the employment action she opposed constituted a Title VII violation, and (2) that her conduct in opposition was reasonable."  *Netter*, 908 F.3d at 937-38.

It is unclear whether a request for accommodation constitutes protected activity under Title VII.  Some case law, including in this District, indicates that requests for accommodation are *not* protected activity.  *See, e.g.*, *Raucci v. Ctr. for Disability Servs.*, MAD-19-1002, 2020 WL 777269, at *4-5 (S.D.N.Y. Feb. 18, 2020) (request for accommodation for pregnancy, without complaint of discrimination, not protected activity); *Johnson v. United Parcel Service, Inc.*, SAG-17-1771, 2020 WL 779459, at *6, n.9 (D. Md. Feb. 14, 2020) ("A mere request for accommodation is not a protected activity under Title VII."), *aff'd*, 839 Fed. App'x 781 (4th Cir. 2021); *Touvian v. Dist. of Columbia*, 330 F. Supp. 3d 246, 251 n.3 (D.D.C. 2018) (noting division, and concluding that "merely requesting a religious accommodation is insufficient for Title VII retaliation claims"); *EEOC v. North Memorial Health Care*, 262 F. Supp. 3d 863, 867 (D. Minn. 2017) ("requesting a religious accommodation is not a protected activity"); *Perlman v. Mayor and City Council of Baltimore*, SAG-15-1620, 2016 WL 640772, at *6 (D. Md. Feb. 18, 2016) (stating that "making a religious accommodation request is not protected activity."); *Librizzo v. Berkshire Grp.*, No. 5-10918-LTS, 2007 WL 9797629, at *4 (D. Mass. Jan. 5, 2007) (request for modified work schedule not Title VII protected activity).

Conversely, other cases have said that requests for accommodation *are* protected activity, typically in the context of requests for religious accommodation.  *See, e.g.*, *Creusere v. Bd. of Educ. of City School Dist. of City of Cincinnati*, 88 Fed. App'x 813, 821 (6th Cir. 2013)

("[Plaintiff] was clearly engaged in a protected activity by requesting religious accommodation . . . ."); *EEOC v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1193 (D. Colo. 2018) ("Protected activity under Title VII includes . . . [a] request for, or complaint at the denial of, a religious accommodation." (internal citations omitted)); *Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 449 (S.D.N.Y. 2014) (noting, in a religious discrimination case, that "requesting an accommodation constitute[s] protected activities" (internal citations omitted)); *Williams v. Wal-Mart Associates Inc.*, No. 2:12-cv-3821-AKK, 2013 WL 979103, at *3 (N.D. Ala. Mar. 8, 2013) ("[R]equesting a religious accommodation and refusing to work due to First Amendment religious exercise is 'protected activity.'" (internal citation omitted)); *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (holding, in a religious discrimination case, that "a claim for retaliation can be based upon a request for reasonable accommodation" (internal citations omitted)); *Gratton v. Jetblue Airways*, No. 04 Civ. 7561, 2005 WL 1251786, at *10 (S.D.N.Y. May 25, 2005) (request for pregnancy accommodation was protected activity, at least when accompanied at the time by complaint of discrimination).

In a recent case, Chief Judge Bredar stated: "Plaintiff's EEO complaints and Reasonable Accommodation requests clearly constituted protected activity within the meaning of Title VII." *Shivers v. Saul*, JKB-19-2434, 2020 WL 7055503, at *6 (D. Md. Dec. 2, 2020).   But, the underlying claim in the case was for disability discrimination, in violation of the Rehabilitation Act, and the plaintiff had made requests for reasonable accommodation for his disability.

Here, regarding a request to accommodate a pregnancy, made without any simultaneous complaint of discrimination, I conclude that Parker's request was *not* protected activity.  This follows from the general principles articulated by the Fourth Circuit as to what constitutes protected activity.  The oppositional prong of Title VII's antiretaliation provision "bars retaliation

42

for 'oppos[ition] [to] any practice made an unlawful employment practice by this subchapter.'" *Netter*, 908 F.3d at 937 (quoting 42 U.S.C. § 2000e-3).  This provision guarantees employees "the right to complain to their superiors about suspected violations of Title VII."  *Bryant*, 333 F.3d at 543-44 (citing *Thompson v. Potomac Elec. Power. Co.*, 312 F.3d 645, 650 (4th Cir.2002)).  This right may be exercised in a wide variety of ways, "to bring attention to an employer's discriminatory activities," including formal and informal procedures, protests, and simply "voicing one's opinions."  *Laughlin*, 149 F.3d at 259.

But exercising this right must, definitionally, involve some opposition to, complaint regarding, or effort to raise awareness of, a suspected violation of Title VII by the employer.  "[A]n employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress."  *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006) (citing *Navy Fed. Credit Union*, 424 F.3d at 405-07), *overruled on other grounds by Boyer-Liberto*, 786 F.3d 264.  This interpretation of Title VII's retaliation provision is consistent with the text of the statute, which prohibits discrimination "against any [employee] . . .  because he has opposed any practice made an unlawful employment practice by" Title VII.  42 U.S.C. § 2000e-3.  *Cf. Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) ("If the meaning of the [statutory] text is plain . . . that meaning controls.").

A simple, unadorned request for accommodation involves no opposition to any suspected violation of Title VII or discriminatory behavior.  In fact, it does not even involve any allegation of such behavior.  It merely requests an accommodation on the part of the employer.  *See Raucci*, 2020 WL 777269, at *4; *Touvian*, 330 F. Supp. 3d at 251 n.3; *North Memorial Health Care*, 262 F. Supp. 3d at 866-69; *Perlman*, 2016 WL 640772, at *6 (all reasoning similarly).  And, Title VII

does not generally require accommodation by an employer, so an employer's failure to grant the request will not, by itself, constitute a violation of Title VII.

The fact that Title VII does not generally require accommodation distinguishes the statute from the ADA, which *does* require accommodation, *see* 42 U.S.C. § 12112(b)(5)(A), and for which the Fourth Circuit has held that requesting an accommodation *is* a protected activity. *See Haulbrook*, 252 F.3d at 706. Likewise, Title VII *does* require reasonable accommodation of an employee's religious practices. *See, e.g.*, *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008). This is unlike other protected categories, including pregnancy. *See Young*, 575 U.S. at 221-22. This helps to explain the determination by some courts that requesting a religious accommodation under Title VII *is* protected activity. But, this logic does not hold for the remainder of the statute.

The situation also might be different if an employee makes a request for accommodation along with a complaint of discrimination. There, the employee *would* have engaged in oppositional, protected conduct. This distinction helps harmonize the two cases cited earlier that concerned retaliation and pregnancy discrimination.

In *Raucci*, 2020 WL 777269, at *4, the plaintiff argued she engaged in protected activity by making a request for accommodation in the form of a restricted workweek. But the court rejected this argument, because plaintiff's request was "unaccompanied by a complaint that she believed she was being discriminated against because of her pregnancy." *Id*. Conversely, in *Gratton*, 2005 WL 1251786, at *10, the defendant argued that "notification and requests for accommodation of one's pregnancy do not constitute protected activities" under Title VII. But, the court did not accept this argument, because the plaintiff had also alleged she complained of the defendant's discriminatory conduct. *Id*.

44

Parker alleges that after she made a formal request for an accommodation, Viaud retaliated by firing her.  ECF 12, ¶¶ 30-36.  She does not allege that she complained about, brought to CNMC's attention, or otherwise opposed any activity she contended at the time was unlawful or discriminatory under Title VII.  In her Opposition, Parker makes a vague assertion that she could have been fired in retaliation not only for the request for accommodation, but also for "opposing Ms. Viaud's unlawful conduct."  ECF 16 at 17.  But there is simply no allegation in the Amended Complaint that Parker engaged in any Title VII oppositional activity, whether formal or informal.  Rather, frustrated after Viaud denied her informal requests for accommodation, plaintiff filed a formal request.  ECF 12, ¶ 30.

To be sure, I have found that Parker's allegations state a claim that she was discriminated against under Title VII.  But, that is different than a claim that she engaged in oppositional activity, for which she was retaliated against.  Ultimately, Parker does not allege any protected activity within the meaning of Title VII.

Accordingly, I conclude that Parker has failed to state a claim for retaliation under Title VII.  Therefore, I will grant the Motion for the portion of Count I (Title VII) relating to retaliation.

### D.  The ADA—Retaliation (Count II)

#### 1.  ADA Retaliation Law Generally

Like Title VII, the ADA also includes an antiretaliation provision.  It states, 42 U.S.C. § 12203: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

45

Courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims. *See Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020); *S.B. ex rel. A.L. v. Bd. of Educ. of Hartford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016); *Rhoads*, 257 F.3d at 391. Therefore, "[i]n order to prevail on a claim of retaliation [under the ADA], a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under [the *McDonnell Douglas*] burden-shifting method." *Rhoads*, 257 F.3d at 391; *see also S.B. ex rel. A.L.*, 819 F.3d at 78.

To establish a prima facie case of retaliation, "a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer acted adversely against her; and (3) her protected activity was causally connected to her employer's adverse action." *Rhoads*, 257 F.3d at 391 (internal citations omitted); *see also S.B. ex rel. A.L.*, 819 F.3d at 78; *A Society Without A Name v. Virginia*, 655 F.3d 342, 350 (4th Cir. 2011); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002).

These elements are virtually the same as the elements for a Title VII retaliation claim. And, in contrast to a claim under ADA's antidiscrimination provision, a plaintiff need not actually be disabled to prevail on an ADA retaliation claim. *Jacobs*, 780 F.3d at 577; *Rhoads*, 257 F.3d at 391.

## 2. Analysis

Although the elements for a prima facie claim of retaliation under the ADA are essentially the same as under Title VII, the Fourth Circuit has squarely held that, under the ADA, a request for accommodation *is* a protected activity. *See Haulbrook*, 252 F.3d at 706. The ADA (unlike Title VII) is an accommodation statute. *See* 42 U.S.C. § 12112(b)(5)(A) (imposing a reasonable accommodation requirement).

Parker alleges that she submitted a request for accommodation to The Hartford, CNMC's third-party benefits administrator, because of her "high risk" pregnancy.  *See* ECF 12, ¶¶ 11, 30-36.  But, CNMC argues that Parker has not pled sufficient factual details to state a claim, because she has not "identif[ied] the specific accommodation she requested, when the accommodation was requested, or the person Plaintiff communicated with regarding this request."  ECF 13-1 at 18.

This argument fails.  Parker's Amended Complaint easily provides CNMC with sufficient notice and detail regarding her ADA retaliation claim.  The Amended Complaint alleges that she submitted the accommodation request to The Hartford after submitting informal requests to Viraud.  ECF 12, ¶ 30.  The Amended Complaint does not state specifically when Parker submitted this request, but does state that The Hartford notified Parker on February 22, 2019, that she was eligible to apply for reasonable accommodations.  *Id*. ¶ 31.  In addition, the Amended Complaint states that Parker submitted the formal request after having made a series of informal requests between December 2018 and February 2019, and "[i]n view of Ms. Viaud's obvious hostility and persistent refusal to accommodate Ms. Parker's informal requests."  ECF 12, ¶ 30; *see id.* ¶¶ 14-29.  Although the Amended Complaint does not provide the content of Viaud's request to The Hartford, it makes sufficiently clear that Parker sought accommodations related to telework and an eight-hour workday.  *Id*. ¶¶ 13-30.

CNMC relies, *inter alia*, on *Sharma v. Howard Cty.*, JKB-12-2269, 2013 WL 530948 (D. Md. Feb. 12, 2013).  There, the court concluded that the plaintiff had not pled a protected activity because his complaint did not "disclose the details of Plaintiff's requested accommodation or the details of his ADA grievances."  *Id*. at *6.  But, drawing all reasonable inferences in Parker's favor, the Amended Complaint adequately pleads the necessary factual details to plausibly allege this

element.  Moreover, there can be no dispute that CNMC took adverse action against Parker by firing her.

Thus, the only remaining question is whether Parker has plausibly alleged that her protected activity (a request for accommodation) was causally connected to CNMC's adverse action.  "[E]stablishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335; *CSRA*, 12 F.4th at 417. Indeed, "very little evidence of a causal connection is required to establish a prima facie case of retaliation." *Roberts*, 998 F.3d at 127 (citing *Burgess*, 466 Fed. App'x at 283); *see CSRA*, 12 F.4th at 417.  And to survive a motion to dismiss, a plaintiff need not establish a prima facie case, but merely allege facts "that plausibly state a violation of Title VII 'above a speculative level.'" *Bing*, 959 F.3d at 617 (quoting *Coleman*, 626 F.3d at 190).

Given this standard, Parker has easily alleged a causal connection.  According to Parker, CNMC "took adverse action" against her "soon after becoming aware" of her protected activity. *Strothers*, 895 F.3d at 335-36.   Viaud learned that Parker had submitted a request for accommodation on or about February 22, 2019.  ECF 12, ¶ 31.  Viaud also knew that Parker had until March 15, 2019, to submit the necessary paperwork from her doctor, and had scheduled a doctor's appointment on Monday, March 4, 2019. *Id*. ¶¶ 31-32.  At the end of the day on Thursday, February 28, 2019—just six days after February 22, and four days before Parker's doctor's appointment—Viaud dismissed Parker, "effective immediately." *Id*. ¶ 33.

## IV.  Conclusion

For the reasons stated above, I shall grant the Motion in part and deny it in part.  I shall dismiss Parker's Title VII retaliation claim, contained in Count I.  But, I shall otherwise deny the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date:   December 9, 2021                              /s/
                                             Ellen L. Hollander
                                             United States District Judge